```
                                                            Priority
                                                       ___  Send
                                                       _✓_  Clsd
                                                       _✓_  Enter
                                                       ___  JS-5/JS-6
                                                       ___  JS-2/JS-3
```

FREEDMAN + TAITELMAN, LLP
Bryan J. Freedman (SBN 151990)
bfreedman@ftllp.com
Jesse A. Kaplan (SBN 255059)
jkaplan@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Defendant
MARIO LAVANDEIRA dba PerezHilton.Com

FILED
CLERK, U.S. DISTRICT COURT
APR 11 2013
CENTRAL DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DIANE WARGO AND JOEL WARGO,

      Plaintiffs,

vs.

MARIO LAVANDEIRA, dba PerezHilton.com, and DOES 1 through 10, inclusive,

      Defendants.

CASE NO.: CV 09-02717 GHK (Ex)

[The Honorable George H. King]

[PROPOSED] JUDGMENT CONFIRMING THE FINAL ARBITRATION AWARD

    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment shall be entered in favor of defendant Mario Lavandeira dba PerezHilton.com ("Lavandeira"), and against plaintiff Diane Wargo ("Wargo"). The arbitration award of the Honorable Richard C. Neal (Ret.) dated March 24, 2013 is confirmed. A true and correct copy of that award is attached hereto as **Exhibit "1."** As Wargo failed to establish liability against Lavandeira, judgment is in favor of Lavandeira and against Wargo. Wargo shall take nothing from Lavandeira. Pursuant to the arbitration award, neither Lavandeira nor Wargo will be awarded attorneys' fees or costs in this action.

Dated: 4/10/13

                            The Honorable George H. King

-1-
[PROPOSED] JUDGMENT CONFIRMING THE FINAL ARBITRATION AWARD

# EXHIBIT "1"

JAMS ARBITRATION NUMBER 1220041183

WARGO, DIANE,

    Claimant,

and

LAVANDEIRA, MARIO,

    Respondent.

---

## FINAL AWARD

**Introduction.** This arbitration presents a dispute concerning injuries allegedly caused to Claimant by Respondent's publication of a communication which Claimant contends Respondent promised to preserve in privacy.

The parties have submitted for decision on briefs and supporting papers the question whether Claimant establishes liability, and have agreed, with the Arbitrator's consent, to reserve for later decision, if reached, the question of the amount of damages to which she is entitled, if any.

This award previously was issued in interim form, with a request that the parties address the availability of attorney's fees and costs to the prevailing party. The parties subsequently submitted letter briefs addressing this question. For the reasons briefly discussed below, the Arbitrator answers this question in the negative. Accordingly, the matter is now ripe for entry of a final award.

The Arbitrator has carefully reviewed the parties' briefs and declarations. The following is his statement of reasons and final award.

**Statement of the Case.** Claimant is a resident of the state of Ohio, formerly employed by an entity called Menorah Park. Respondent is a resident of Los Angeles and operates an Internet website named "PerezHilton.com." Claimant's counsel described the site in his letter brief of December 23, 2010, as follows:

> [A] website that provides news and gossip services as well as a service that allows users to interactively post and respond to comments. The website proclaims that it is 'one of the leading go-to sites for celebrity news garnering over 300 million hits a month.' Respondent's celebrity news regularly includes outing gay actors, commenting on sexuality of Disney teen stars, and drawing phallic symbols on pictures of famous people.

The matter is arbitrable under the Disputes provision on Respondent's website, which Claimant consented to by using the site, and under the order the United States District Court, Central District of California, dated December 18, 2009 granting Plaintiff's motion to compel arbitration (a copy of the order is attached with the demand for arbitration submitted to JAMS March 22, 2010.)

1

Much of the content for Respondent's website is derived from email comments submitted by members of the public. The website earns revenues from its customers, who pay to advertise on the site.

Posted on the website are conditions of use. The site advises, "If you visit PerezHilton.com, you accept these conditions." Relevant excerpts from these are attached with Claimant's arbitration demand, including the following:

> **REVIEWS, COMMENTS, COMMUNICATIONS AND OTHER CONTENT**
>
> Visitors may post reviews, comments, and other content; and submit suggestions, ideas, comments, questions, or other information, so long as the content is not illegal, obscene, threatening, defamatory, invasive of privacy, infringing of intellectual property rights, or otherwise injurious to third parties or objectionable
>
> ...
>
> If you do post content or submit material ... You grant [Respondent] a nonexclusive, royalty-free, perpetual... right to use, reproduce, modify, adapt, publish ... distribute, and display such content throughout the world in any media. You grant [Respondent] right to use the name that you submit in connection with such content.

The conditions of use also include the following regarding privacy:

> **PRIVACY NOTICE**
>
> Perez Hilton.com respects your privacy and is committed to protecting it at all times. This internet privacy notice explains how we collect, use, and safeguard information on this website. Please read this privacy notice carefully. By visiting perezhilton.com, you are accepting the practices described in this privacy notice and agree that a dispute over privacy is governed by this privacy notice and conditions of use.
>
> ***
>
> **Your California Privacy Rights**
>
> California Civil Code section 1798.83, also known as the "Shine the Light" law, permits our customers who are California residents to request and obtain from us once a year, free of charge, information about the personal information (if any) we disclosed to third parties for direct marketing purposes in the preceding calendar year.
>
> **What Personal Information About Customers Does PerezHilton.Com Collect?**
>
> Information you give us: we receive and store any personal and financial information you enter on our website or give us in any other way ... We use the information that you provide for such purposes as responding to your requests, customizing future options for you, improvised improving our website, and communicating with you."

### Does Perez Hilton Share the Information It Receives?

Information about our customers is an important part of our business and we are not in the business of selling it to others. We share customer information only as described below. [The notice goes on to state that customer information will be shared only with or for third-party service providers, business transfers, and to comply with law etc.]

The present dispute has its origins in the following email which Claimant sent to Respondent from an e mail account provided to Claimant by her employer, Menorah Park:

From: Diane Wargo dwargo@menorahpark org
Date: Dec 27, 2007 at 9:27 am
Subject: I hate Skankelina the Homewrecker

"Perez you are a FAT GAY PIG! Angelina is a ugly whore! You love her because she is a Fag lover! Your brother is a gay little jerk just like your fat ugly ass! MANGELINA is a disgusting gross skank!"

This email followed an email Claimant sent December 11th with very similar content and tone.

Shortly after receiving the quoted email Perez Hilton posted the following on its website:

"On 12/27/07 Diane Wargo (DWargo@menorahpark.org) wrote [here the website quoted the email verbatim.]"

Menorah Park had a written Computer Policy which stated that its computers and email system were furnished to employees for business use. The Policy warned that email usage might be monitored or accessed to ensure compliance. The Policy explicitly prohibited use of the email system in ways that "are disruptive, offensive to others, or harmful to morale." The Policy specifically forbade ethnic slurs, racial comments, off-color jokes, and "anything that may be construed as harassment or showing disrespect for others." The Policy warned that employees who violated it would be subject to discipline, up to and including termination.

Menorah Park also had a separate written Internet Policy which also forbade the transmission of offensive material and also warned that transgressions could lead to discipline including termination.

The evidence establishes that shortly after Respondent posted Claimant's December 27, 2007 email, Menorah Park executives received a flood of angry emails protesting Claimant's comments. In response, Menorah Park's managers conferred and then fired Claimant after concluding she had seriously violated company policy.

**Discussion.** There is no dispute that the conditions of use constituted an offer to enter into a contract which Claimant accepted by visiting the website and sending content.

Claimant contends that Respondent in the conditions promised privacy for her email communication, and breached that promise by publishing her December 27, 2007, email on its website. She further contends that this publication was the legal and proximate cause of termination of her employment, causing injury and damage.

Claimant fails to establish liability.

3

First, a fair reading of the conditions of use, giving due significance to all parts, reflects the intent that content of the kind contained in the Claimant's email would not be private. Claimant "submitted material" in her mail which, putting aside its offensive substance, contained gossip-rumor about private affairs -- precisely the kind of material the website is in the business of publishing. The section of the conditions dealing with submitted material made clear that visitors to the site gave Respondent a license to publish such content, explicitly including the name of the provider, to all the world.

The privacy provisions, on the other hand, were intended to provide customers with assurances regarding use of private contact information, primarily by way of sale for commercial use. This is shown by the description of "Your Privacy Rights" as arising under California's "Shine the Light" law and concerning "personal information (if any) we disclosed to third parties for direct marketing purposes." Further, the privacy notice specifically relates to rights conferred upon customers of the site as distinct from visitors. Visitors such as Claimant are not customers. They do not buy anything from the site. Their interaction instead consists of sending comments or submitting material.

The notion that a site specializing in raunchy gossip would promise privacy for such content or to the names of those providing the content is not a reasonable expectation. Privacy of content is contrary to the essential function of the site. And in any event, the governing sections of the conditions, as noted, explicitly confer a license and right upon Respondent to use submitted material and name the submitter.

Thus, Claimant's breach of contract theory fails.

There is a second and independent ground to reject her claim. Although publication of her communication arguably was a "but for" cause of termination of her employment, she also must meet the law's requirement for proximate cause. The proximate cause doctrine operates to limit, for public policy reasons, liability for consequences actually caused by a defendant's conduct. It is a "policy-based legal filter on 'but for' causation that courts apply to those more or less undefined considerations which limit liability even where the fact of causation is clearly established." *Vons Companies v. Seabest Food, Inc.*, 14 Cal.4th 434, 474 (1996).

Here, the root cause of Claimant's firing was her flagrant violation of her employer's policy against personal use of the email and Internet access it furnished to distribute non-business related and offensive material. Public policy would be disserved by allowing her to recover damages suffered because of her own misconduct.

Yet a third basis to reject liability, related to the second, is the unclean hands doctrine. This rule prevents a plaintiff from recovering for injuries based on her own misconduct. Again, Claimant's injury here flows from her own violation of the rules of her workplace and her own offensive behavior.

Although the foregoing discussion focuses on the Claimant's breach of contract theory, it also furnishes the reasons why Claimant's tort claims fail.

The claim for invasion of privacy falls because Claimant had no reasonable expectation of privacy, a critical element of such a claim. As explained, the website specifically gave Respondent a right to use and publish the material Claimant submitted, including her name. And again, it is not reasonable for a visitor to a gossip website to expect privacy for gossipy submissions.

The claim for fraud depends on the premise that Respondent promised privacy, but that premise

4

has been rejected, for the reasons explained.

The claim for intentional infliction of emotional distress fails because Respondent did nothing outrageous and instead acted consistent with the contract and the parties' reasonable expectations.

The promissory estoppel claim fails because there was no promise of privacy.

Finally, the proximate cause and unclean hands doctrines also apply to bar each of the tort theories.

**Other Claims, Arguments, and Defenses.** An arbitrator's mission in preparing a reasoned award is to provide a lucid explanation of the factual and legal grounds crucial to decision. There is no obligation or necessity to address every item of evidence or factual or legal contention raised. Contentions and arguments not expressly addressed above are rejected as lacking merit or immaterial to the decision.

**Attorneys' Fees and Costs.** The dispute clause in the conditions contains no provision for recovery by the prevailing party of attorney's fees or costs.

Respondent cites AAA rule R-43 as providing authority for an award of fees and costs here. But, as Claimant points out in her letter brief, that Rule, in subpart (d)(ii), specifies that attorneys' fees and costs should be awarded only if all parties have requested them in their pleadings, and/or if authorized by the arbitration agreement or law. None of these conditions is met here, so the request for fees and costs is denied.

**Final Award.** The award is in favor of PerezHilton.com and against Diane Wargo. Ms. Wargo shall take nothing by her demand in arbitration.

This is a final award intended to be subject to confirmation by a competent court.

This Final Award is rendered March 24, 2013.

By: *[signature]*

Hon. Richard C. Neal (Ret.)
Arbitrator

5

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Wargo, Diane vs. Lavandeira, Mario
Reference No. 1220041183

I, Jose Maria D. Patino, Jr., Esq., not a party to the within action, hereby declare that on March 29, 2013, I served the attached FINAL AWARD on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Santa Monica, CALIFORNIA, addressed as follows:

Brian D. Spitz Esq.
L/O Brian D. Spitz
4568 Mayfield Rd.
#102
Cleveland, OH 44121
Phone: 216-291-4744
brian.spitz@spitzlawfirm.com
   Parties Represented:
   Diane Wargo

Bryan Freedman Esq.
Jesse A. Kaplan Esq.
Freedman & Taitelman, LLP
1901 Avenue of the Stars
Suite 500
Los Angeles, CA 90067-6001
Phone: 310-201-0005
bfreedman@ftllp.com
jkaplan@ftllp.com
   Parties Represented:
   Mario Lavandeira

I declare under penalty of perjury the foregoing to be true and correct. Executed at Santa Monica, CALIFORNIA on March 29, 2013.

Jose Maria D. Patino, Jr., Esq.
jpatino@jamsadr.com